**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| |
|---|
| DAVID KAMAL, |
| *Plaintiff*, |
| v. |
| UNITED STATES OF AMERICA, |
| *Defendant*. |

No. 3: 24-CV-1085-MPS

**PARTIAL RULING ON MOTION TO VACATE,**
**SET ASIDE, OR CORRECT SENTENCE**

David Kamal moves *pro se*, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, after pleading guilty and completing his term of incarceration.[1] Kamal claims a violation of his Sixth Amendment right to effective assistance of counsel. He claims his lawyer performed deficiently by 1) not communicating with him adequately, failing to advise him of the date for a status conference until 20 minutes before it began, and failing to advise him on what to say during the presentence interview with Probation; 2) assuring him he would receive a sentence of probation and failing to give him adequate advice regarding restitution; 3) failing to give him adequate advice regarding his allocution at sentencing; 4) refusing to file an appeal; and 5) refusing to file a fourth motion to extend his surrender date. For the reasons that follow, the court rejects all of Kamal's claims, except his claim that his lawyer refused to file an appeal. The Court will hold an evidentiary hearing on that claim.

---

[1] Kamal was imprisoned for 8 months and released on June 14, 2024. *U.S. v. Kamal*, 22-cr-00021-MPS-1, ECF No. 73; www.bop.gov/inmateloc/, BOP reg. No. 8454809. He is now serving a term of supervised release. *Id., ECF Nos. 73,158.* This court has jurisdiction under 28 U.S.C. § 2255 because Kamal is still "in custody" while serving his term of supervised release. *See Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994) (holding that a "petitioner under supervised release may be considered 'in custody'").

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 7, 2022, Kamal pled guilty to tax evasion in violation of 26 U.S.C. § 7201. *United States v. Kamal*, 22-cr-000021-MPS-1, ECF No. 89 at 43. Kamal filed a fraudulent U.S. Individual Tax Return Form 1040 for the tax year 2012 which falsely claimed moving expenses. *Id.,* ECF No. 54 at 5. In connection with his Tax Court appeal, Kamal emailed a fraudulent moving invoice and an altered bank statement from a jointly held bank account to an IRS attorney. *Id*. at 6. Kamal also claimed false and inflated unreimbursed medical and dental expenses in 2012 through 2017 tax returns that he filed jointly as either married or head of household. *Id*. Kamal deposited the tax refunds he received from these fraudulent filings into a bank account he held individually. *Id*. at 7. The total tax loss attributable to Kamal for the tax years 2012 through 2017 is $163,264. *Id*.

The court sentenced Kamal below the advisory guideline range of 18 to 24 months, to eight months of imprisonment and two years of supervised release. *Id*., ECF No. 90 at 56. On April 22, 2026, the court extended Kamal's term of supervised release by 12 months. *Id*., ECF Nos. 153, 158.

## II.    LEGAL STANDARD

### A.    Section 2255 Motion

Section 2255 permits collateral challenges to federal convictions. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the Court which imposed the sentence to vacate, set aside or correct the sentence."). *Pro se* litigants are "entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest."

*Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted). But a 2255 movant faces a steep uphill climb. He must show that "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks omitted). Section "2255 review is narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (internal quotation marks omitted).

### B.      Ineffective Assistance of Counsel

An "ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). A plaintiff claiming ineffective assistance of counsel "must show that [(1)] counsel's performance was deficient," and (2) "the deficient performance prejudiced [plaintiff]." *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The burden of showing ineffective assistance is "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Harrington v. U.S.*, 689 F.3d 124, 129 (2d Cir. 2012) (internal citation omitted). The determinative question is not whether counsel deviated from best practices but whether his "representation amounted to incompetence under prevailing professional norms." *Id*. at 129-30. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland*, 466 U.S. at 690.

Section 2255(b) requires a district court to "grant a prompt hearing" on a petitioner's claims "[u]nless the motion and the files and records of the case conclusively show that the

prisoner is entitled to no relief" (emphasis supplied). The Second Circuit has described "[t]he procedure for determining whether a hearing is necessary" as "in part analogous to ... a summary judgment proceeding," insofar as a court should "usually" hold a hearing "[i]f material facts are in dispute." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir.2009). A full testimonial hearing is not required where the "record was supplemented by a detailed affidavit from trial counsel," and testimony "would add little or nothing to the written submissions." *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001).

## III.    DISCUSSION

### A.    Failure to Communicate Effectively with Kamal

Kamal claims his lawyer was ineffective in the frequency and quality of the communications he had with Kamal. ECF No. 1-1 at 1-3. Specifically, Kamal claims his lawyer failed to communicate with him during the two weeks preceding his first court date (*id.* at 1), did not provide advice regarding what to say to the probation officer during the pre-sentence interview (*id.* at 2), did not advise him to pay restitution in advance (*id.*), failed to give him adequate advice regarding using his 401K to pay the restitution (*id.*), and failed to advise Kamal to be more conciliatory during the sentencing (*id.*).

"The purpose of the Sixth Amendment effective assistance of counsel guarantee is not to improve the quality of legal representation, but simply to ensure that criminal defendants receive a fair trial." *Greiner v. Wells*, 417 F.3d 305, 318 (2d Cir. 2005) (internal citation omitted). Under the first prong of the *Strickland* test, a defendant must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Kamal's communication claims do not allege errors "so serious that counsel was not functioning as counsel guaranteed … by the Sixth Amendment."

*Id*. Kamal does not claim that his lawyer failed to communicate a plea offer or that he failed to discuss the particulars of an offer. Instead, Kamal claims that his lawyer did not communicate with him during the two weeks preceding a status conference and that as a consequence, he did not appear in court. ECF No. 1-1 at 1. He seems to acknowledge that his lawyer informed him of the status conference two weeks earlier and that he reminded him about it twenty minutes before the scheduled time, but states that he did not appear at the conference because he did not have enough time to get to court once he received the reminder. *Id*. Kamal's lawyer's conduct is judged "on the state of the law and circumstances at the time of the … proceeding and must also indulge a strong presumption that [his] conduct falls within the wide range of reasonable professional assistance." *Darby v. United States*, 508 F. App'x 69, 72 (2d Cir. 2013) (internal quotations omitted). A failure to remind Kamal of the status conference early enough is not "so serious that [Kamal's lawyer] was not functioning as counsel as guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687 (internal quotation marks omitted).

Kamal was aware of the court date. Not only did his lawyer tell him that he had a "court date in two weeks," but the court also notified him of the court date on the docket. *Id.*  The court emphasized that the status conference was "in-person … with the defendant present." *United States v. Kamal*, 22-cr-00021-MPS-1, ECF No. 23. Kamal is not challenging whether his lawyer communicated with him; he is challenging the quality and timing of the communication. "[T]he Sixth Amendment does not guarantee the right to perfect counsel[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013). The timing of the reminder did not affect Kamal's ability to receive a fair trial. There is also no evidence that Kamal's lawyer's failure to provide earlier or more frequent reminders about a status conference prejudiced Kamal in any way.

The remainder of Kamal's communication-related claims implicate legal strategy and do not indicate "oversight, carelessness, ineptitude, or laziness." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009). "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence .…" *Strickland v. Washington*, 466 U.S. 668, 689 (1984). A lawyer's decision not to advise a client specifically what to say to a probation officer during a presentence interview is a reasonable strategic choice to avoid having the client appear coached and to encourage him to be honest and natural. The same is true of a lawyer's advice about what to say during a sentencing allocution. As for restitution, the nuance of when to pay the restitution depends on a client's economic circumstances and, here at least, only gains clarity in hindsight. "[F]air assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight … and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669. From Kamal's lawyer's perspective at the time, he could not have foreseen the court's reaction to the timing of the restitution payment or Kamal's remarks. Kamal's lawyer's performance was reasonable because it was grounded in solid defense strategy.

Kamal's lawyer's performance also cannot be found deficient because he did not respond to email messages that Kamal sent while he was incarcerated. *United States v. Kamal*, 22-cr-000021-MPS-1, ECF No. 1-1 at 5. There is no set rule for the frequency a lawyer must communicate with a defendant. *See Strickland v. Washington*, 466 U.S. 668, 696 (1984) ("the principles we have stated do not establish mechanical rules … the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."); *Wojtowicz v. United States,* 550 F.2d 786, 792 (2d Cir.1977) ("In evaluating claims of ineffective assistance of counsel it has long been the rule that 'time consumed in oral discussion and legal research is not the crucial test.... The proof of the efficiency of such assistance lies in the character of the

resultant proceedings, ...'") (citation omitted). Kamal's lawyer eventually did respond. ECF No. 1-1 at 5. Kamal's dissatisfaction with the timing does not rise to a deficiency contrary to professional norms.

With regard to Kamal's claim that his lawyer assured him he would receive probation, it is, of course, unwise for counsel to assure a client he will receive a specific sentence. But Kamal's evidence that his lawyer "assured" him that he would "get probation as a first-time offender with no record" consists of a single sentence in an unsworn attachment to his petition. ECF No. 1-1 at 2. And that sentence is immediately followed by one that states "[h]e had seen many cases far worse than mine with minor jail time," which suggests that the lawyer shared his experience with Kamal and, at most, told him that it was *likely* that Kamal would receive probation based on counsel's experience. Any such assurance was a prediction based on the lawyer's personal experience with a small sample of cases. *See United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (defendant may not "characteriz[e] a mistaken prediction as ineffective assistance of counsel"). Under oath, at the change of plea hearing, Kamal said, "No, Your Honor" in response to the court's question whether anyone made any promises to him about what his sentence would be. ECF No. 89 at 26.

Kamal's complaints about his lawyer's alleged communication failures and advice during pretrial proceedings amount to little more than disappointment with his sentence and contradict representations he made to the court – under oath – when he pled guilty. At the change of plea hearing, Kamal answered affirmatively to the court's questions about whether he had enough time and information to discuss his case with his lawyer. *United States v. Kamal*, 22-cr-00021, ECF No. 89 at 9. He acknowledged that he had read the indictment and discussed it with his lawyer. *Id*. at 10. He did not indicate that he had been rushed or unprepared for the hearing.

Kamal acknowledged that he was satisfied with his lawyer's representation. *Id*. at 9. Kamal does not point to any facts that would call the statements he made under oath into question. The court need not presume factual assertions are credible if contradicted by the record. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). The "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In any event, Kamal does not point to any facts to show that he was prejudiced by his lawyer's alleged failure to communicate more frequently or provide better advice with regard to sentencing. Kamal nowhere alleges that he would not have pled guilty if his lawyer had communicated more frequently or provided better advice about sentencing. And he cannot show that the Court would have sentenced him more leniently had he paid restitution more promptly or had he been more "conciliatory" during the hearing, as any such adjustment would have made no difference in the sentence the Court proposed. At sentencing, the Court relied principally on the seriousness of the criminal conduct, the need to promote respect for the law, and the need for general deterrence. ECF No. 90 at 52-56. These factors bore no relationship to Kamal's attitude at sentencing or the timing of his restitution payment.

Where a defendant claims that "counsel has misled him as to the possible sentence which might result from a plea of guilty, the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (internal citation omitted). Kamal was advised at his change of plea as to the sentencing possibilities, and was ultimately sentenced well below the Guidelines range and below the range anticipated by the parties in the plea agreement. *United States v. Kamal*, 22-cr-000021-MPS-1,

ECF Nos. 42, 89 at 27-28, 90 at 11, 56. He has not shown "a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). His communication claims are without merit.

### B. Motions to Extend Surrender Date

Kamal claims that his lawyer was unaware that his motion to extend his surrender date had been granted. ECF No. 1-1 at 3. Kamal had already pled guilty and been sentenced. Kamal's claim fails because he has not (1) "show[n] that counsel's representation fell below an objective standard of reasonableness"; nor has he (2) "affirmatively prove[n] prejudice." *Strickland v. Washington*, 466 U.S. 668, 688, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The "claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

On November 22, 2023, Kamal's lawyer filed a motion to extend Kamal's surrender date so Kamal could go to an appointment with his cardiac physician. ECF No. 1-1 at 3; *U.S.A. v. Kamal*, 22-cr-00021-MPS-1, ECF No. 82. It was Kamal's third motion for extension of the surrender date. *U.S.A. v. Kamal*, 22-cr-00021-MPS-1, ECF No. 82. While waiting for the ruling, Kamal experienced chest pain and went to the hospital. ECF No. 1-1 at 3. Kamal called his lawyer to explain that he would not be able appear at his current self-surrender date because he was experiencing chest pain. ECF No. 1-1 at 3. Kamal's lawyer instructed Kamal to tell the prison that he would be late. *Id*. When Kamal called, the prison informed him that his third motion to extend his surrender date had been granted. *Id*.

The facts do not show that Kamal's lawyer's representation fell below an objective standard of reasonableness. Kamal's lawyer filed two successful motions and moved Kamal's self-surrender date more than a month past the original surrender date. *Id*., ECF No. 78, 82.  The

November 22nd motion to extend the surrender date was granted on November 24, 2023 (*U.S.A. v. Kamal*, 22-cr-00021-MPS-1, ECF No. 84), the same day that Kamal was scheduled to surrender, and the same day that he suffered chest pain. His lawyer's failure to notice the court's order before Kamal called about his chest pain does not amount to "incompetence" and may not even deviate from "common custom" as it is unknown what time Kamal called or how busy Kamal's lawyer had been before taking Kamal's call. See *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."). There is no rule regarding when a lawyer must check court rulings. Regardless of whatever else he had been working on, Kamal's lawyer took Kamal's call, addressed Kamal's emergency (chest pain), and advised him on next steps. This is an objectively reasonable performance given the circumstances.

Kamal also claims that his lawyer refused to file a fourth motion to extend surrender date. ECF No. 1-1 at 4. He claims that he was scheduled for "cardiac rehab on 1/4/2024" and that he sent his "surgeon's notes to [his] lawyer so he could file another motion to delay [his] surrender date." *Id*. He claims his lawyer refused to file a fourth motion because "he had already filed three." *Id*. The record belies Kamal's claim. The docket shows that after the third motion to extend the surrender date was filed on November 22, 2023, and granted, Kamal's lawyer did file a fourth motion to extend the time of surrender to January 17, 2024. *United States v. Kamal*, 22-cr-00021-MPS-1, ECF Nos. 82, 84, 85. Although Kamal claims his lawyer refused to file the fourth motion for extension, the record shows that the fourth motion was filed. *Id*., ECF No. 85.

Kamal does not point to any facts to support his claim that his lawyer refused to file a motion to extend his surrender date. I "need not assume the credibility of factual assertions …

where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). Kamal's claim is denied because it is without merit.

### C.     Refusal to file appeal

Kamal claims he told his lawyer that he "wanted to file an appeal" and that his lawyer "refused to file [his] appeal." ECF No. 1-1 at 3. Kamal's lawyer, Trent LaLima attests that "[a]t no point … did Mr. Kamal direct [him] to file a notice of appeal" and that "Mr. Kamal's email to [him] indicated that he wished to speak to [him] about it and hear [his] advice." ECF No. 19 at 5.

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "An 'attorney who fails to file a notice of appeal requested by his client is constitutionally ineffective' even 'when the client waived appeal in his plea agreement' and even when the attorney 'believes the requested appeal would be frivolous.'" *Brown v. United States*, 2022 WL 17420465 at *2 (2d Cir. Dec. 6, 2022) (quoting *Campusano v. United States*, 442 F.3d 770, 771-72 (2d Cir. 2006)). Prejudice is presumed "with no further showing from the defendant of the merits of his underlying claims." *Campusano*, 442 F.3d at 749-50.

At the court's request, both Kamal and his lawyer produced affidavits addressing whether counsel disregarded an instruction to file an appeal. ECF Nos. 15, 19.  In his declaration, Kamal states that his lawyer "made it very clear to me that he would not file the appeal …" ECF No. 15 at 1. By contrast, his lawyer's affidavit states that "I never told Mr. Kamal that I would not file a notice of appeal on his behalf." ECF No. 19 at 4. To resolve these conflicting versions of events, an evidentiary hearing is necessary.

## IV.     CONCLUSION

11

For the foregoing reasons, the court rejects all of Kamal's claims in his motion to vacate or set aside the court's sentence (ECF No. 1), except for his claim regarding his lawyer's alleged refusal to file an appeal. The Court will schedule an evidentiary hearing on that claim.

IT IS SO ORDERED.

/s/Michael P. Shea
Michael P. Shea, Chief U.S.D.J

Dated: Hartford, Connecticut
        July 9, 2026